UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

STAR INSURANCE COMPANY and
CENTURY SURETY INSURANCE COMPANY                    PLAINTIFFS

v.                              No. 2:20-CV-02160

TRINITY PROPERTY MANAGEMENT, LLC, et al.            DEFENDANTS

## OPINION AND ORDER

Before the Court is Plaintiffs Star Insurance Company and Century Surety Insurance Company's motion (Doc. 63) for summary judgment, brief in support (Doc. 64), and statement of facts (Doc. 65).   Separate Defendant Trinity Property Management, LLC ("Trinity") filed a response (Doc. 68), brief in opposition (Doc. 70), and statement of facts (Doc. 69).  Plaintiffs filed a reply (Doc. 75).  For the reasons set forth below, the motion will be GRANTED.

## I.      Background

In December 2017 Plaintiff issued Commercial General Liability Policy Number 4198783 ("Policy A") to Trinity, with a policy end date of December 2018.  (Doc. 63-2).  In December 2018 Plaintiff issued Commercial General Liability Policy Number 4247191 ("Policy B") to Trinity which contained identical terms to Policy A and remained in effect until December 2019. (Doc. 63-3).

The portions of the policies relevant to this lawsuit read:

**SECTION 1 – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property

1

damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

**b.** This insurance applies to "bodily injury" and "property damage" only if:

> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

> **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have known prior to the policy period.

. . .

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defendant the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

. . .

**2. Exclusions**

2

This insurance does not apply to:

**a.  Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

. . .

**SECTION V – DEFINITIONS**

. . .

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

**SPECIAL EXCLUSIONS AND LIMITATIONS ENDORSEMENT**

. . .

**E. It is agreed that the following changes are made to SECTION V – DEFINITIONS:**

. . .

**3.  Item 13., "Occurrence" is deleted in its entirety and replaced with the following:**

**13.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All "bodily injury" or "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.

Pursuant to Arkansas Code Section 23-79-155:

**b.** The definition of "occurrence" also includes "bodily injury" and "property damage" resulting from faulty workmanship; and

**b.** The definition of "occurrence" required by this section of Arkansas law does not serve to limit or restrict the applicability of any exclusion for "bodily injury" or "property damage" under this Coverage Part.

**4. Item 14., "Personal and advertising injury" is deleted in its entirety and replaced with the following:**

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

. . .

**c.** The wrongful eviction from or the wrongful entry into or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that such wrongful eviction, wrongful entry or invasion of the right of private occupancy was committed by or on behalf of the room's, dwelling's or premises' owner, landlord or lessor.

(Doc. 63-2, pp. 12, 17, 24, 26, 48, 49; Doc. 63-3, pp. 13, 18, 25, 27, 48, 49).

Plaintiff also issued to Trinity three Commercial Excess Liability policies, two of which covered excess liability arising from claims covered by Policy A and Policy B, and the third covered excess liability from a policy issued by a separate insurance company which provided no defense or indemnification to the current complaint.

Trinity is a property management company hired to manage Southbrooke Apartments in Fort Smith, Arkansas. Beginning in 2020, Southbrooke Apartment tenants filed a lawsuit in the Circuit Court of Sebastian County, Arkansas and the United States Department of Housing and Urban Development ("HUD") filed three complaints against Trinity. The HUD complaints and the lawsuit allege that a Trinity maintenance worker, Joshua Cason, repeatedly sexually assaulted and harassed female tenants in their apartments when he was sent to make repairs. This harassment allegedly began as early as 2016. Though the victims made multiple reports to the manager of the apartment complex—Dawanna Sweeten, a Trinity employee—and filed police reports, no action

was taken against Cason; he maintained his employment and possession of a master key which allowed him to enter any apartment in the complex.

Plaintiffs filed a second amended complaint in this action for declaratory judgment seeking a declaration that, under the plain terms of five insurance policies issued to Trinity, Plaintiffs have no obligation to provide a defense or indemnity to Trinity in the underlying lawsuit or HUD Complaints 1, 2, or 3. The parties have settled the underlying lawsuit, HUD Complaint 2, and HUD Complaint 3. The only remaining proceeding is HUD Complaint 1 (the "HUD Complaint"), which alleges that Trinity committed gender discrimination in violation of §§ 804(b) and 818 of the Fair Housing Act "by imposing discriminatory terms and conditions on the rental of a dwelling on the basis of sex; and by interfering and coercing a person in her enjoyment of a dwelling because of sex." (Doc. 63-1, p. 2). Plaintiffs argue that under the terms of the insurance policies issued to Trinity they have no duty to defend or insure against any losses stemming from the HUD Complaint. Trinity disagrees.

## II.    Legal Standard

After viewing the record in the light most favorable to the nonmoving party and granting all reasonable factual inferences in the nonmovant's favor, a motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Serv., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon

5

mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted).

### III.    Analysis

A federal district court sitting in diversity applies its forum state's substantive law. *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007).  In Arkansas, the duty to defend under an insurance policy arises when there is a possibility that the injury or damage may fall within the policy coverage. *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC.*, 411 S.W.3d 184, 190-91 (Ark. 2012).  Generally, the "pleadings against the insured determine the insurer's duty to defend." *Id.*  To determine if a duty to defend arises, the "language in the contract from which the purported duty arises" is examined. *Id.*  "The provisions of an insurance contract 'are to be interpreted by the court in the plain and ordinary meaning of the terms and cannot be construed to contain a different meaning.'" *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735, 739–40 (Ark. 1998) (quoting *Horn v. Imperial Cas. & Indem. Co.*, 636 S.W.2d 302, 303 (Ark. 1982)).  "The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Id*. at 750 (quoting *S. Farm Bureau Cas. Ins. Co. v. Williams*, 543 S.W.2d 467, 470 (Ark. 1976)).

Turning to the applicable insurance policies in this case, there is no possibility that the discrimination alleged in the HUD Complaint falls within Coverage A.  Coverage A only applies to "bodily injury" or "property damage" caused by an "occurrence."  Under the policies, an "occurrence" is an accident.  The HUD Complaint alleges unlawful discrimination by Trinity, stating Trinity was notified by tenants of Cason's sexual assaults and Trinity intentionally chose not to address the complaints.  Intentional conduct is not an accident, and there is therefore no duty

to defend under Coverage A.

The duty to defend also does not arise under the terms of Coverage B, "personal and advertising injury liability." Personal and advertising injury is defined as injury arising out of wrongful entry into a dwelling committed on behalf of the room's, dwelling's or premises' owner, landlord or lessor. The discrimination complained of arose out of Cason's entry into the apartments of the complainants. However, for there to be "personal and advertising injury," Cason's entry and subsequent assault would need to have been on behalf of, and therefore imputed to, his employer.

Under Arkansas law there is a possibility that Cason's actions could be imputed to Trinity. *See, e.g., J.B. Hunt Transp., Inc. v. Doss*, 899 S.W.2d 464, 468-69 (Ark. 1995) (holding respondeat superior may apply in circumstances where employer leaves discretion in completing employment tasks to employee because "whether an employee is acting within the scope of employment is not necessarily dependent upon the situs of the occurrence but on whether the individual is carrying out the object and purpose of the enterprise, as opposed to acting exclusively in his own interest.").

If Cason's actions were imputed to Trinity, however, the exclusion for the "Knowing Violation Of Rights Of Another" would apply and preempt coverage under the policy. Under this exclusion, no coverage is provided for actions caused by or at the direction of Trinity with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury." Should the law impute Cason's conduct to Trinity, it would also impute Sweeten's knowledge of that conduct, if not Cason's. When Cason sexually assaulted the complainants, and when Sweeten refused to address the reports, a reasonable person would have been aware that this violated the complainants' rights and would cause injury. *See CNA Ins. Co. v. McGinnis*, 666 S.W.2d 689, 691 (Ark. 1984) (holding that the test for whether injury is expected

or intended is an objective standard). Therefore, should Cason's conduct be imputed to Trinity, the exclusion for the "Knowing Violation Of Rights Of Another" would preclude the duty to defend.

Because there is no possibility that the harm arising out of the allegations in the HUD Complaint is covered by Coverage A or Coverage B, Plaintiff has no duty to defend Trinity. Because there is no duty to defend triggered by the underlying policies, the Commercial Excess Liability policies also will not be triggered. Plaintiffs' motion for summary judgment will be granted.

## IV.  Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' motion (Doc. 63) for summary judgment is GRANTED. A declaratory judgment will be entered separately.

IT IS SO ORDERED this 5th day of October, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE